**THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**
**CIVIL CASE NO. 1:11-cv-00236-MR**

| | |
|---|---|
| **DAVID KEITH ROBERTS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **MEMORANDUM OF** |
| **vs.** ) | **DECISION AND ORDER** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 9] and the Defendant's Motion for Summary Judgment [Doc. 12].

**I.    PROCEDURAL HISTORY**

The Plaintiff David Keith Roberts protectively filed an application for a period of disability and disability insurance benefits on July 25, 2008, alleging that he had become disabled as of April 3, 2006.  [Transcript ("T.") 89-95, 101-02].   The Plaintiff's application was denied initially and on reconsideration.   [T. 44-49, 53-56].   Upon the Plaintiff's request for a rehearing, a hearing was held before an Administrative Law Judge ("ALJ") on March 17, 2010.   [T. 27-43].   On April 20, 2010, the ALJ issued a

decision denying the Plaintiff benefits. [T. 9-26]. The Appeals Council denied the Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner. [T. 1-6]. The Plaintiff has exhausted all available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II.   STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, see Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

The Social Security Act provides that "[t]he findings of the Commissioner of any Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). The Fourth Circuit has defined "substantial evidence" as "more than a scintilla and [doing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Smith v. Heckler, 782 F.2d

2

1176, 1179 (4th Cir. 1986) (quoting <u>Perales</u>, 402 U.S. at 401, 91 S.Ct. at 1427).

The Court may not re-weigh the evidence or substitute its own judgment for that of the Commissioner, even if it disagrees with the Commissioner's decision, so long as there is substantial evidence in the record to support the final decision below.  <u>Hays</u>, 907 F.2d at 1456; <u>Lester v. Schweiker</u>, 683 F.2d 838, 841 (4th Cir. 1982).

## III.    THE SEQUENTIAL EVALUATION PROCESS

In determining whether or not a claimant is disabled, the ALJ follows a five-step sequential process.  20 C.F.R. §§ 404.1520, 416.920.  If the claimant's case fails at any step, the ALJ does not go any further and benefits are denied.  <u>Pass v. Chater</u>, 65 F.3d 1200, 1203 (4th Cir. 1995).

First, if the claimant is engaged in substantial gainful activity, the application is denied regardless of the medical condition, age, education, or work experience of the applicant.   20 C.F.R. §§ 404.1520, 416.920.  Second, the claimant must show a severe impairment.  If the claimant does not show any impairment or combination thereof which significantly limits the claimant's physical or mental ability to perform work activities, then no severe impairment is shown and the claimant is not disabled.  <u>Id.</u>  Third, if the impairment meets or equals one of the listed impairments of Appendix

3

1, Subpart P, Regulation 4, the claimant is disabled regardless of age, education or work experience.  Id.  Fourth, if the impairment does not meet the criteria above but is still a severe impairment, then the ALJ reviews the claimant's residual functional capacity (RFC) and the physical and mental demands of work done in the past.  If the claimant can still perform that work, then a finding of not disabled is mandated.  Id.  Fifth, if the claimant has a severe impairment but cannot perform past relevant work, then the ALJ will consider whether the applicant's residual functional capacity, age, education, and past work experience enable the performance of other work.  If so, then the claimant is not disabled.  Id.

## IV.    THE ALJ'S DECISION

On April 20, 2010, the ALJ issued a decision denying the Plaintiff's claim.  [T. 9-26].  Proceeding to the sequential evaluation, the ALJ found that the Plaintiff's date last insured was December 31, 2009 and that he had not engaged in substantial gainful activity from his alleged onset date of April 3, 2006 through his date last insured of December 31, 2009.  [T. 14].   The ALJ then found that the medical evidence established the following severe impairments: degenerative disease of the lumbar spine and missing digits of the left hand.  [Id.].  The ALJ determined that none of Plaintiff's impairments met or equaled a listing.  [T. 17].

4

The ALJ then assessed the Plaintiff's residual functional capacity (RFC), finding that the Plaintiff had the ability to perform a limited range of medium work as defined in 20 C.F.R. § 404.1567(c). Specifically, the ALJ found that the Plaintiff can lift and carry 50 pounds occasionally and 25 pounds frequently, stand and/or walk six hours in an eight-hour workday, and sit six hours in an eight-hour workday, and that he can perform such work despite missing digits of the non-dominant left hand. The ALJ further found no impairment in the ability to understand, retain and follow instructions, relate to others, and tolerate day to day stressors; mild impairment in the ability to manage money; average ability in personal competence; and below average ability in occupational competence and predicted occupational competence due to physical pain. [T. 17-21]. At step four of the sequential evaluation, the ALJ determined that the Plaintiff was capable of performing his past relevant work as an off-road truck driver, as such work did not require the performance of work-related activities precluded by the Plaintiff's RFC. [T. 21-22]. Considering the Plaintiff's age, education, work experience, and residual functional capacity, the ALJ further found that there were additional jobs that existed in significant numbers in the national economy that the Plaintiff could perform. [T. 21]. He therefore concluded that the Plaintiff therefore was

5

not "disabled" as defined by the Social Security Act from April 3, 2006, the alleged date of onset, through the date last insured, December 31, 2009. [T. 22].

## V.    DISCUSSION[1]

The Plaintiff asserts the following assignments of error: (1) that the ALJ's decision is not supported by substantial evidence because it contains several harmful factual errors and omissions; (2) that the ALJ failed to conduct a proper analysis of the medical opinions and evidence in determining the Plaintiff's RFC; (3) that the ALJ incorrectly assessed the Plaintiff's credibility on the issue of the severity of his pain; and (4) that the ALJ incorrectly found that the Agency had met its burden at step five of the sequential evaluation.  [Doc. 9-1].  The Court will address each of these assignments of error in turn.

### A.    The ALJ's Characterization of the Evidence

The Plaintiff first argues that the ALJ committed numerous factual errors and omissions in his decision which require remand.  [Doc. 9-1 at 12-15].  Specifically, the Plaintiff contends that the ALJ failed to address a large portion of the medical record; inaccurately stated that Plaintiff never pursued physical therapy; incorrectly stated that examinations repeatedly

---

[1]  Rather than set forth a separate summary of the facts in this case, the Court has incorporated the relevant facts into its legal analysis.

showed full range of motion in his arms and legs and that he walks effectively without assistance; erroneously stated that there were no documented side effects from medications; placed too much emphasis on the fact that the Plaintiff did not require surgery or see an orthopedist or neurologist; and erroneously stated that his mental complaints were well-controlled with medication. [Doc. 9-1 at 12-15]. Finally, the Plaintiff complains that the ALJ selectively listed positive statements from the reports about his activities of daily living while ignoring his limitations in performing such activities. [Doc. 9-1 at 15].

Contrary to the Plaintiff's arguments, there is substantial evidence to support the ALJ's characterization of the record. The medical evidence indicates that the Plaintiff had reported a history of intermittent low back pain, which began getting progressively worse in 2006. [T. 355, 404]. An MRI of the lumbar spine performed in May 2006 revealed (1) left paracentral disc herniation extending into the superior aspect of the left lateral recess of S1 displacing and possibly partially impinging upon the left S1 nerve root; and (2) spondylosis throughout the lumbar spine. [T. 233]. The Plaintiff's neurosurgeon, Dr. Jonathan Sherman, noted a normal gait, full strength, intact sensation, and full range of motion. [T. 184]. Dr. Sherman did not believe that surgical intervention was warranted. [Tr.

185].  The Plaintiff continued on medication and underwent radiofrequency ablation, medical branch nerve block, and an epidural steroid injection in 2006.  [T. 350-58].  In January 2007, Dr. Sherman again recommended against surgery.  [T. 182]. In February and March 2008, Plaintiff again received steroid injections with positive results.  [T. 186-90, 320].  In May 2008, the Plaintiff reported that his pain was tolerable, and he remained stable through August 2008.  [T. 193-97].  The Plaintiff received another steroid injection in September 2008.  [T. 320-24].  In November 2008, Dr. Dale Mabe conducted a consultative examination and noted back tenderness, positive straight leg raises (supine only), and a stiff gait.  He noted that sensation and upper and lower limb strength were intact.  [T. 261-62].

The Plaintiff continued to report pain through early 2009.  [T. 433-36].  An MRI of the spine performed in February 2009 showed the following: (1) a broad-based left central and subarticular protrusion of the L5-S1 disc displacing the left S1 nerve root posteriorly slightly; (2) mild degeneration in the other discs, but with no focal protrusion or herniation; (3) no evidence of neoplasm and no evidence of spinal stenosis; and (4) no suspicious enhancement seen following contrast infusion.  [T. 349].  At a visit to Dr. Sherman's office in May 2009, Jason Koclan, PA-C, diagnosed

degenerative disc disease with primarily low back pain and noted decrease range of motion in the back with antalgic gait, but a generally intact neurological exam. [T. 342-43]. Surgery was still not recommended [T. 343].

On August 10, 2009, it was noted that the Plaintiff's pain was "reasonably well-controlled" on medication, even though he had not been performing any exercises or stretches. [T. 398]. On September 11, 2009, it was again noted that the Plaintiff's symptoms were stable on medication. [T. 392]. While there was a notation that Plaintiff's pain was not well-controlled after physical therapy in October 2009 [T. 387], all subsequent notations indicated that the Plaintiff's pain improved with medication and that he had good results with home exercises. [T. 378, 381, 384]. The physical examinations during this time are consistent with this reporting of well-controlled and stable symptoms, his only difficulty being with straight leg raising and gait. [T. 379, 382, 385, 391, 399]. The exams revealed generally intact range of motion, strength, reflexes and sensation. [T. 379, 382, 385, 388, 391, 399].

While the Plaintiff contends that the ALJ took a selective view of the evidence, the ALJ's decision contains a detailed discussion of the Plaintiff's medical history. [T. 18-21]. As noted by the ALJ, the medical evidence

Case 1:11-cv-00236-MR   Document 14   Filed 02/22/13   Page 9 of 25

reveals a history of conservative treatment, with no recommendation for surgery. [T. 18-19]. While there were intermittent positive examination findings and reports of symptoms throughout the record, no treating source ever opined that the Plaintiff would be unable to engage in substantial gainful activity. In fact, both state agency physicians who reviewed the record opined that Plaintiff was capable of medium work. [T. 281-88, 312-19]. Further, the majority of the evidence in the record subsequent to the state agency physicians' review primarily showed an improved condition on medication with few significant examination findings. [T. 379, 382, 385, 388, 391, 399]. The ALJ's characterization of this evidence was entirely appropriate.

As to the Plaintiff's argument that the ALJ erred in his statement regarding the fact that the Plaintiff never pursued physical therapy, this statement, when read in the context of the decision, was an accurate reflection of the record. In making this finding, the ALJ was referencing an August 2009 examination note, which stated that the Plaintiff never pursued physical therapy and was not performing any exercises or stretching. [T. 18, 398]. Accordingly, the ALJ's statement was fully supported by the record and was not erroneous.

The Plaintiff also takes issue with the ALJ's finding that examinations repeatedly showed that the Plaintiff had full range of motion of his arms and legs and could walk effectively without assistance. This statement, however, is also supported and accurate. As noted by the ALJ, the record reveals that repeated examinations demonstrated normal gait [T. 19, 184, 250, 257, 265, 345, 356, 399, 400, 408] and full range of motion of the arms and legs [T. 19, 379, 382, 385, 391, 442, 448, 456, 463, 469]. Further while there are some notations indicating a cautious or antalgic gait, there is nothing in the record to indicate that the Plaintiff ever required or was prescribed a cane or any other assistive device for ambulation. There is substantial evidence to support the ALJ's findings regarding the ability to walk.

The Plaintiff's contention that the ALJ committed harmful error by stating that there was no evidence of side effects from medications is also without merit. While the Plaintiff once reported dizziness and sleepiness as side effects from medication [T. 152] and while the Plaintiff's wife once noted that his pain medications caused an induced sleep [T. 157], these reports are not consistent with the other evidence of record which indicates no such side effects from the medication. [T. 110, 114, 237, 432, 449,

466].  There is substantial evidence to support the ALJ's finding in this regard.

The Plaintiff further argues that the ALJ improperly implied that the Plaintiff's problems were not very severe merely because his back condition did not require surgery or because the Plaintiff did not see an orthopedist or neurologist.  The ALJ did not err in his consideration of this evidence.  In assessing the credibility of a claimant's subjective statements regarding pain, the ALJ may consider the claimant's entire course of treatment, including specialists seen and procedures performed.  See Craig v.Chater, 76 F.3d 585, 595 (4th Cir. 1996).  As such, it was entirely appropriate for the ALJ to consider the fact that no physician recommended surgery in determining that the Plaintiff's allegations were not as severe as alleged.  This argument, then, is without merit.

The Plaintiff further argues that that the ALJ erroneously stated that the Plaintiff's mental complaints were well-controlled with medication. There is substantial evidence, however, to support the ALJ's findings in this regard.  As noted by the ALJ, the Plaintiff received medication from his primary care physician for depression and anxiety symptoms.  [T. 15, 20]. Subsequent examinations by treating and examining sources revealed no significant mental abnormalities or deficits in mental functioning.  [T. 15,

184, 242-45, 264-65, 342, 346, 347, 356].  Further, as noted by the ALJ, there is no evidence that the Plaintiff pursued treatment by a mental health specialist during the relevant time period even though it was recommended.   [T. 15, 379, 383, 385, 391, 443, 457, 463, 469].  Significantly, the consultative psychologist who examined Plaintiff noted no mental impairments [T. 241, 244], and both state agency psychologists who reviewed the record noted that the Plaintiff had no severe mental impairments.   [T. 267, 298].   These expert opinions support the ALJ's statements and findings regarding the severity of Plaintiff's mental impairment.  See 20 C.F.R. § 404.1527(e); SSR 96-6p, 1996 WL 374180, at *2.   The ALJ simply made no error in discussing Plaintiff's mental impairment which requires remand.

Finally, the Plaintiff argues that the ALJ's decision is not supported by substantial evidence because he selectively chose certain daily activities to highlight while ignoring evidence of the Plaintiff's limitations.  The evidence of record shows that the Plaintiff performed a multitude of daily activities, including daily cleaning, dishes, laundry, outside chores, mowing three time per week, driving, errands, shopping, walking the dog, preparing simple meals, reading, watching television, attending church, singing, playing guitar, talking on the phone with family and friends, and socializing with

people at church.  [T. 16, 123-38].  The ALJ was entitled to rely on these activities to find that the Plaintiff was not as limited as alleged.  See Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005) (holding that a claimant's daily activities such as performing home exercises, taking care of family pets, cooking, and doing laundry, were inconsistent with the claimant's complaints of pain and inability to perform basic work activities); Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) (recognizing that plaintiff's activities of daily living suggested that plaintiff was not disabled from work).

The Plaintiff contends that in considering these activities of daily living, the ALJ disregarded evidence showing significant restrictions on these activities, such as his needing reminders to maintain basic hygiene and take his medicines, excessive sleepiness, and limitations on his ability to walk.  The ALJ did not err in his consideration of this evidence.  While the Plaintiff's wife reported in January 2009 that he needed reminders to take his medication, his medication made him drowsy, and he needed reminders with his personal hygiene [T. 156-58], this report is not consistent with the evidence of record noted above which demonstrated no deficits in mental functioning.  Further, as previously noted, while the Plaintiff and his wife noted sleepiness as a side effect of medication, all of

14

the other evidence in the record indicates that the Plaintiff reported no side effects from the medication. Finally, while the Plaintiff contends that the ALJ did not adequately consider the statement that the Plaintiff's trips to the grocery store were limited after walking four aisles, the ALJ explicitly acknowledged such statement in his decision [T. 19].

In sum, there is substantial evidence to support the ALJ's characterization of the evidence of record. The Plaintiff's first assignment of error is without merit.

### B. Determination of the RFC and Weighing of the Medical Evidence

The Plaintiff next contends that the ALJ did not properly consider the medical opinions of record in determining the Plaintiff's residual functional capacity (RFC). [Doc. 9-1 at 15-18]. Specifically, the Plaintiff argues that the ALJ erred in giving significant weight to the state agency physicians, erred in failing to discuss what weight he was giving to the treating physicians, and erred in his consideration of the consultative physician, Dr. Mabe. [Id. at 16-18].

The state agency physicians opined that the Plaintiff could perform the exertional requirements of medium work. [T. 288, 319]. These opinions are largely consistent with the medical evidence, as discussed above, which reflects repeated recommendations against surgery, the

ability to control the Plaintiff's pain through medication, and a lack of consistently reported examination findings. While these physicians did not have an opportunity to review subsequent evidence, as discussed by the ALJ, treatment notes and examinations reports in the record after the review show that surgery still was not recommended [T. 341-44], and that the Plaintiff's pain was controlled and stable with medication [T. 378, 381, 384, 392, 398]. The examinations during this time were generally normal with difficulty only with straight leg raising and gait. [T. 379, 382, 385, 391, 399]. The subsequent exams also revealed generally intact range of motion, strength, reflexes and sensation. [T. 379, 382, 385, 388, 391, 399]. As such, the ALJ properly relied upon the state agency physicians' opinions to find that the Plaintiff could perform the requirements of medium work. See Thacker v. Astrue, Civil No. 3:11CV246-GCM-DSC, 2011 WL 7154218, at *6 (W.D.N.C. Nov. 28, 2011) ("The fact that the state agency physician did not have access to the entire evidentiary record -- because the record was incomplete at the time of the assessment -- is inconsequential as the ALJ considered the entire evidentiary record and substantial evidence supports his determination.").

Additionally, the opinions of non-examining state agency medical sources must be considered by the ALJ, insofar as they are supported by

evidence in the case record, as those of highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act. See 20 C.F.R. §§ 404.1527(e); SSR 96-6p, 1996 WL 374180, at *2. Thus, regardless of the physicians' medical specialities, an issue raised by Plaintiff for the first time [Doc. 9-1 at 16], they are to be considered experts in the evaluation of medical issues in disability claims under the Act.

The Plaintiff further argues that the ALJ committed reversible error in his consideration of the evidence from Plaintiff's treating physicians. An ALJ must give controlling weight to the opinion of a claimant's treating physician when the opinion concerns the nature and severity of an impairment, is well supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the case record. 20 C.F.R. § 404.1527(c)(2). Thus, an opinion of a treating physician is not entitled to controlling weight if it is unsupported by medically acceptable clinical and laboratory diagnostic techniques and/or inconsistent with other substantial evidence of record. Id.; see also Rogers v. Barnhart, 204 F.Supp.2d 885, 893 (W.D.N.C. 2002) ("Even the opinion of a treating physician may be disregarded where it is inconsistent with clearly established, contemporaneous medical records").

17

In the present case, no treating physician offered a medical source opinion regarding the effect of the Plaintiff's impairment on his ability to function. To the extent the treatment notes discussed the Plaintiff's reports of pain and examination findings, these were appropriately considered by the ALJ. [See T. 17-21].

The Plaintiff also argues that the ALJ did not adequately consider the opinion of the consultative examiner, Dr. Mabe. [Doc. 9-1 at 17-18]. The ALJ clearly considered this report and reasonably determined it was not entitled to great weight because it was largely based upon the Plaintiff's own statements which the ALJ found not fully credible. [T. 20]. Indeed, Dr. Mabe, in his functional assessment, indicates that the *Plaintiff* is the one stating what he can and cannot do. [T. 262]. Further, while there were objective tests, such as range of motion, squatting, and straight leg raising, the limits of such testing were dependent on the Plaintiff's own reports of pain. [Id.]. There is substantial evidence in the record, as discussed above, which does not indicate such extreme limitations, and indeed, indicates that the Plaintiff's pain was controlled and stable with medication. Ultimately, an ALJ may accord little weight to a physician's opinion based mainly on a claimant's subjective complaints. Mastro v. Apfel, 270 F.3d

Case 1:11-cv-00236-MR   Document 14   Filed 02/22/13   Page 18 of 25

171, 177-78 (4th Cir. 2001). For the reasons stated above, the ALJ's discussion of the opinion evidence is not cause for remand.

In sum, the Court finds that the ALJ's decision contains a thorough discussion of the evidence of record, including the medical opinions, objective medical evidence, and treatment notes. The ALJ reasonably considered the opinions, consistent with the regulations, and substantial evidence supports his RFC determination. The Plaintiff's assignment of error, therefore, is without merit.

### C.    The ALJ's Credibility Assessment

The Plaintiff next argues that the ALJ failed to properly assess his credibility with respect to his allegations of pain. [Doc. 9-1 at 18].

In the Fourth Circuit, a two-step process is used to analyze subjective allegations. Hines v. Barnhart, 453 F.3d 559, 564 (4th Cir. 2006); Craig, 76 F.3d at 594-95; 20 C.F.R. § 404.1529(b) and (c). First, the ALJ must determine whether a medical impairment is present which can reasonably be expected to cause the symptoms alleged. Craig, 76 F.3d at 594-95; 20 C.F.R. § 404.1529(b). If this question is answered affirmatively, the ALJ then must evaluate the intensity and persistence of the symptoms. Craig, 76 F.3d at 594-95; 20 C.F.R. § 404.1529(c). Factors relevant to this determination include the claimant's daily activities; the claimant's

statements regarding the location, duration, and frequency of the symptoms; precipitating and aggravating factors; and the effectiveness of medicine and other treatment. Craig, 76 F.3d at 594-95; 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii). Moreover, although a claimant's allegations cannot be disregarded at step two because of a lack of objective evidence, an ALJ may still take the objective medical evidence into consideration and is free to reject the allegations to the extent they are inconsistent with the available evidence, including the objective medical evidence. Hines, 453 F.3d at 565 n.3; 20 C.F.R. § 404.1529(c)(2). Here, the ALJ undertook the proper analysis in rejecting the Plaintiff's allegations of completely disabling symptoms.

The ALJ properly found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were credible only to the extent they were consistent with the RFC determination. [T. 19-20]. This finding was properly supported by a discussion of the objective evidence, treatment notes and medication, the opinions of the non-examining state agency physicians, and the Plaintiff's daily activities. [T. 18-21]. While the record does contain positive examination findings and reports of symptoms throughout the record, as noted by the ALJ [T. 18], there is no indication that Plaintiff could not engage in substantial gainful

activity. As noted above, many examinations revealed few significant findings, and, while there were objective tests, such as range of motion, squatting, and straight leg raising, the limits of such testing were primarily dependent on the Plaintiff's subjective reports of pain. Also, while some examinations revealed antalgic gait, other examinations demonstrated normal gait and full range of motion of the arms and legs. Even considering the reports of antalgic gait, however, the Plaintiff never required nor was he prescribed an assistive device for ambulation. Despite some of these positive findings on examinations, no treating source opined that the Plaintiff would be unable to engage in substantial gainful activity, and both state agency physicians who reviewed the record opined that Plaintiff was capable of medium work. Moreover, the majority of the evidence in the record subsequent to their review primarily showed an improved condition on medication with few significant examination findings.

Further, as noted by the ALJ, surgery was not recommended and the Plaintiff reported an improved condition with medication and home exercises. [T. 18]. With the exception of one report from Plaintiff and one from his wife, as noted above, there was no indication of any side effects from medication. Finally, the record establishes that Plaintiff was engaged in a wide range of daily activities, as noted above. Such activities are

Case 1:11-cv-00236-MR   Document 14   Filed 02/22/13   Page 21 of 25

simply inconsistent with the Plaintiff's allegations of disabling symptoms. See Johnson, 434 F.3d at 658; Gross, 785 F.2d at 1166.

Ultimately, the ALJ is responsible for making credibility determinations and resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). An ALJ is accorded deference as to determinations of a claimant's credibility. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). "Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." Id. The ALJ's assessment of the Plaintiff's allegations was fully explained and is supported by substantial evidence.

### D. The Step Five Determination

The Plaintiff next argues that the ALJ's decision is not supported by substantial evidence because the VE never stated, nor was he asked, whether his testimony was consistent with the DOT. The Plaintiff contends that this failure alone is sufficient for a remand or reversal pursuant to SSR 00-4p. [Doc. 9-1 at 19].

At the outset, the Court notes that the determination of disability in this case was made at step four of the sequential evaluation, when the ALJ found that the Plaintiff could perform his past work as a truck driver. [T. 21

at Finding 6]. The Court concludes that there is substantial evidence to support this finding by the ALJ. Thus, any error made at step five of the sequential evaluation in determining that there are other jobs in the national economy that the Plaintiff could perform would be, at most, harmless error. In any event, the Court finds no error here. While SSR 00-4p requires the ALJ to inquire as to any possible conflict between the VE evidence and the DOT, failure to do so is not automatically reason for remand. <u>See</u> <u>Justin v. Massanari</u>, 20 F. App'x 158, 160 (4th Cir. 2001). Here, the Plaintiff has failed to identify any actual discrepancy between the VE's testimony and the DOT. Absent the demonstration of any actual conflicts, the ALJ's failure to make the inquiry required by SSR 00-4p does not amount to reversible error.

While this final assignment of error is largely directed to the ALJ's determination at step five, the Plaintiff also appears to challenge the ALJ's finding at step four that the Plaintiff was capable of performing his prior work. Specifically, the Plaintiff maintains that because he was regularly prescribed and taking narcotic medication, the Court "should take judicial notice of the fact that driving a truck while one is under the influence of an opiate is not a safe activity, and it should not be encouraged by the Agency." [Doc. 9-1 at 20].

The manner in which the Plaintiff has presented this assignment of error must be discouraged. Assignments of error should be set forth separately and supported by both legal citations and citations to the record, or they will not be considered by the Court. Assignments of error that are not properly set forth and supported would ordinarily be deemed waived.

Turning to the merits of the Plaintiff's argument, the Court notes that the Plaintiff cites to no authority for such a novel assertion. In any event, the record contains several notations that the Plaintiff had no side effects from medication, and that no physician placed any limitation on the Plaintiff's ability to drive. Indeed, the Plaintiff reported that he continued to drive. [T. 40, 126, 134]. Accordingly, the Plaintiff's challenge to the ALJ's finding at Step Four must fail. See Rose v. Astrue, No. 07-5079-RHB, 2008 WL 4274442, at *3 (D.S.D. Sept. 17, 2008) (affirming ALJ's finding that plaintiff could perform past work as a school bus driver despite allegations of side effects from medication, where among other factors, no physician placed restrictions on plaintiff due to medication side effects and plaintiff continued to drive).

## VI. CONCLUSION

For the foregoing reasons, the Court concludes that the ALJ applied the correct legal standards, and that there is substantial evidence to

24

support the ALJ's finding of no disability from the alleged date of onset through the date late insured.

## O R D E R

Accordingly, **IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 9] is **DENIED**; the Defendant's Motion for Summary Judgment [Doc. 12] is **GRANTED**; and the Commissioner's decision is hereby **AFFIRMED**. This case is hereby **DISMISSED WITH PREJUDICE.**

A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.** Signed: February 22, 2013

Martin Reidinger
United States District Judge